1
2
3
4
5
6               IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9   Riki Rashaad Muhammad,            )   No. CV-06-1036-PHX-SMM (LOA)
                                      )
10              Petitioner,           )   **REPORT AND RECOMMENDATION**
                                      )
11  vs.                               )
                                      )
12  Dora Schriro, et al.,             )
                                      )
13              Respondents.          )
                                      )
14  _____  )

15          This matter arises on Petitioner's Petition for Writ of Habeas Corpus by Person

16  in State Custody Pursuant to 28 U.S.C. § 2254.  (docket # 1)  Respondents have filed an

17  Answer (docket # 14) to which Petitioner has replied (docket # 21) Although Petitioner

18  requests a hearing, the Court finds no basis for conducting an evidentiary hearing and will

19  resolve this matter on the pleadings.[1]  28 U.S.C. § 2254(e)(2).

20  **I. Background**

21          **A.  Charges, Trial and Sentencing**

22          On April 13, 1995, Petitioner was indicted on three counts of child abuse in the

23  Superior Court of Arizona, Maricopa County.[2]  (Respondents' Exh. A)  On May 11, 2005,

24  _____

25          [1] In his Reply, Petitioner also requests the appointment of counsel.  The Court previously
26  denied Petitioner's request for counsel (docket # 20) and the Court finds no new basis to support
    the appointment of counsel.
27
28          [2] At the time of his indictment and trial, Petitioner was known as Richard Warren Miller.
    He subsequently changed his name to Riki Rashaad Muhammad.  (Respondents' Exh. OO)

1   Petitioner moved to remand the case to the Grand Jury for a redetermination of probable

2   cause.  (Respondents' Exh. B)  On September 15, 1995, the court[3] granted the motion and

3   remanded the matter to the Grand Jury.  (Respondents' Exh. H) Thereafter, the Grand Jury

4   indicted Petitioner on the following counts: (1) Count 1: first-degree murder (a class 1

5   felony), or alternatively, (2) Count 2: second-degree murder (a class 1 felony and dangerous

6   crime against children); (3) Count 3: child abuse under circumstances likely to produce

7   death or serious physical injury (a class 2 felony and dangerous crime against children); and

8   (4) Count 4: child abuse based on failure to obtain medical attention (a class 2 felony and

9   dangerous crime against children).  (Respondents' Exh. I) The State subsequently amended

10  the indictment to allege Petitioner's prior felony conviction for endangerment (a non-

11  dangerous, class 6 felony).  (Respondents' Exh. J)

12          Petitioner's case proceeded to trial[4] and on December 17, 1996 a jury convicted

13  Petitioner of Counts 1, 3, and 4.  (Respondents' Exhs, K, CC) On February 7, 1997, the trial

14  court sentenced Petitioner. (Respondents' Exhs. CC-DD) For the conviction for first-degree

15  (felony) murder, the court sentenced Petitioner to life imprisonment with no possibility of

16  release for 35 years.  (Respondents' Exh. DD at 18-19)  For the convictions on the two

17  counts of child abuse, the court sentenced Petitioner to the presumptive term of 17 years'

18  imprisonment.  The court ordered that all three sentences run consecutively.  (Respondents'

19  Exh. DD at 19)

20          **B.  Direct Appeal**

21          Petitioner filed a timely petition for review in the Arizona Court of Appeals.

22  (Respondents' Exh. G)  Petitioner had previously filed a notice of post-conviction relief on

23  February 13, 1997 and the court had appointed Petitioner post-conviction counsel.

24  (Respondents' Exh. EE)  The trial court subsequently granted Petitioner's motion to stay

25

26  _____

27      [3]  Judge *pro tem* John J. Trombino presided.

28      [4]  The Honorable Michael O. Wilkinson presided.

- 2 -

post-conviction proceedings to permit Petitioner to seek direct review first.  (Respondents'

Exhs. JJ-KK)

Petitioner raised the following claims on direct appeal:

1.  The jury instructions were deficient in failing to require the jury to find that Petitioner intentionally or knowingly produced death or caused serious physical injury;

2.  The evidence was insufficient to support a predicate offense for felony-murder;

3.  The imposition of consecutive sentences constitutes double punishment in violation of A.R.S. § 13-116;

4.  The child abuse convictions should be set aside under the "merger doctrine;" and

5.  The trial court violated Petitioner's right to self-representation during sentencing.

(Respondents' Exh. GG)

On January 27, 1998, the Arizona Court of Appeals rejected Petitioner's first

four claims but found that the court had violated Petitioner's right to self-representation

during sentencing.  Accordingly, the appellate court remanded for re-sentencing.

(Respondents' Exh. LL) On March 2, 1998, Petitioner filed a motion for reconsideration

which the appellate court denied on July 9, 1998.  (Respondents' Exhs. MM, NN, PP)

Petitioner sought review in the Arizona Supreme Court which was denied on

February 25, 1999.  (Respondents' Exhs. QQ-SS)

**C.  Remand and Re-sentencing**

On remand, the trial court scheduled the re-sentencing for April 16, 1999, but

continued the hearing after Petitioner requested the assistance of counsel.  (Respondents'

Exhs. UU,VV)  On June 17, 1999, Petitioner, represented by counsel, filed a motion for a

new trial which was denied.  (Respondents' Exhs. XX-EEE)  Thereafter, on October 22,

1999, the trial court re-sentenced Petitioner to the same terms it had previously imposed and

reaffirmed the stay of post-conviction proceedings.  (Respondents' Exhs. GGG-HHH)

1

**D.  Appeal after Remand**

2          After re-sentencing, Petitioner sought review in the Arizona Court of Appeals.

3   Counsel filed a brief pursuant to *Anders* v. California, 386 U.S. 738 (1967) advising the

4   appellate court that he could find no new issues to raise on appeal.  (Respondents' Exh. III)

5   Counsel, however, advised the court that Petitioner wished to raise a claim that the

6   indictment was improperly amended.  (Respondents' Exh. III) Thereafter, Petitioner filed a

7   supplemental *pro se* brief.  (Respondents' Exhs. LLL) On August 29, 2000, the Arizona

8   Court of Appeals affirmed Petitioner's convictions and sentences.  (Respondents' Exh.

9   MMM)  On April 26, 2001, the Arizona Supreme Court denied review.  (Respondents'

10  Exhs. SSS,TTT)

11         **E.  Post-Conviction Proceedings**

12         Following the conclusion of Petitioner's direct appeal, the post-conviction

13  proceedings resumed.  On January 3, 2002, Petitioner's counsel filed a Notice of Completion

14  advising the court that he was unable to find any viable issues to raise.  (Respondents' Exh.

15  WWW) Thereafter, Petitioner filed a *pro se* petition for post-conviction relief raising several

16  claims of ineffective assistance of counsel.  (Respondents' Exhs. YYY)  On January 29,

17  2003, the trial court denied the petition for lack of merit.  (Respondents' Exh. HHHH)

18         Petitioner sought appellate review (Respondents' Exh. IIII) which the Arizona

19  Court of Appeals denied on November 24, 2004.  (Respondents' Exh. NNNN)  On July 7,

20  2005, the Arizona Supreme Court denied review.  (Respondents' Exh. QQQQ)

21         **F.  Petition for Writ of Habeas Corpus**

22         Thereafter, Petitioner timely filed the pending Petition for Writ of Habeas Corpus

23  (docket # 1) which is now briefed and ready for review.  Petitioner raises the following

24  seven grounds for relief:

25              I.  The trial court violated Petitioner's right to Due Process because the jury
                was not properly instructed regarding the predicate offense, child abuse,
26              underlying felony-murder because the instructions did not require a finding of
                specific intent contrary to Arizona law;

27
                II.  The trial court violated Petitioner's right to Due Process by giving a jury
28              instruction which allowed the jury to infer intent from a voluntary act.  "Criminal

- 4 -

state (sic) 17 has the potential to confuse a jury and should not be given in cases where there is no evidence to support a finding that a defendant has acted unconsciously or without effort and determination;"

III.  Petitioner was denied his Sixth Amendment right to notice of the "true nature" of the charges;

IV.  Petitioner's right to Due Process was violated because insufficient evidence supported the charge that Petitioner delayed in seeking medical treatment;

V.  Petitioner's Sixth Amendment right to effective assistance of counsel was violated because counsel failed to object to erroneous jury instructions regarding the lesser-included child abuse offenses;

VI.  Petitioner received ineffective assistance of counsel because counsel was not aware of the *mens rea* requirement of the child abuse statutes which led to Petitioner's refusal of an advantageous plea offer;

VII.  Petitioner's consecutive sentences violate the Double Jeopardy Clause.

(docket # 1)

Respondents assert that Petitioner procedurally defaulted claims IV and VII and that his remaining claims lack merit.  Petitioner opposes this assertion.  The Court will first address the procedural default issue.

**II.  Analysis of Exhaustion and Procedural Default**

Respondents assert that Petitioner has failed to exhaust grounds four and seven and that they are procedurally barred.  Petitioner claims that the he properly presented those claims to the State courts.  (docket # 21 at 4-6)

**A. Exhaustion and Procedural Default**

The Supreme Court has repeatedly held that state courts should be given the first opportunity to consider a state prisoner's assertion that his state conviction and/or sentence violates federal law. *Williams v. Taylor*, 529 U.S. 420, 436-37 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Thus, before a federal court may grant a state prisoner habeas corpus relief, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1);*Williams*, 529 U.S. at 436-37; *Coleman*, 501 U.S. at 731.  The requirement that state prisoners first present their claims in federal court, or exhaust their state court remedies, is intended "to prevent 'unnecessary conflict' between courts equally bound to guard and protect the rights secured

by the Constitution." *Picard v. Connor*, 404 U.S. 270, 275-276 (1971).  In view of the

exhaustion requirement, the federal court will not entertain a petition for writ of habeas

corpus unless the state prisoner has exhausted his federal claims in state court.  *Pliler v.*

*Ford*, 542 U.S. 225, 230 (2004); *Rose v. Lundy*, 455 U.S. 509, 521-22 (1982).

To properly exhaust a claim in the state courts, a petitioner must have afforded

the state courts the opportunity to rule upon the merits of his federal claims by "fairly

presenting" them to the state's "highest" court in a procedurally appropriate manner.  *Castille*

*v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that

"[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' her

claim in each appropriate state court . . . thereby alerting the court to the federal nature of the

claim.").  The Ninth Circuit Court of Appeals has concluded that, in Arizona, in the context

of a petitioner who has not been sentenced to death, the "highest court" requirement is

satisfied if the petitioner has presented the claim to the Arizona Court of Appeals either on

direct appeal or in a petition for post-conviction relief.  *Swoopes v. Sublett*, 196 F.3d 1008,

1010 (9th Cir. 1999); *Beyart v. Schriro*, 2006 WL 1305275, * 3 n. 2 (D.Ariz. 2006) ("Arizona

law no longer requires that a life sentence case be appealed to the Arizona Supreme Court.")

"[S]ubmitting a new claim . . . in a procedural context in which its merits will not be

considered absent special circumstances does not constitute fair presentation." *Roettgen v.*

*Copeland*, 33 F.3d 36, 38 (9th Cir. 1994)(citing *Castille v. Peoples*, 489 U.S. 346, 351

(1989)).  Additionally, to fairly present his claims, a petitioner must describe both the

operative facts and the federal legal theory.  *Reese*, 541 U.S. at 28.  It is not enough that all of

the facts necessary to support the federal claim were before the state court or that a

"somewhat similar" state law claim was raised.  *Reese*, 541 U.S. at 28 (stating that a

reference to ineffective assistance of counsel does not alert the court to federal nature of the

claim).  Rather, the habeas petitioner must cite in state court to the specific constitutional

guarantee upon which he bases his claim in federal court.  *Tamalini v. Stewart*, 249 F.3d 895,

898 (9th Cir. 2001).  Similarly, general appeals to broad constitutional principles, such as due

process, equal protection, and the right to a fair trial, are insufficient to establish fair

presentation of a federal constitutional claim.  *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial").  Similarly, a mere reference to the "Constitution of the United States" does not preserve a federal claim.  *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).  Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ."  *Lyons*, 232 F.3d at 668.  A state prisoner does not fairly present a claim to the state court if the court must read beyond the pleading filed in that court to discover the federal claim.  *Baldwin*, 541 U.S. at 27.

In summary, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005)(citations omitted).

Where a habeas petitioner has failed to "fairly present" his federal claims to the state's highest available court in a procedurally appropriate manner, state court remedies may, nonetheless, be "exhausted."  This type of exhaustion is often referred to as "procedural default" or "procedural bar."  *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 731-32. There are two categories of procedural default.

First, a state court may have applied a procedural bar, such as waiver or preclusion, when the prisoner attempted to raise the claim in state court.  *Nunnemaker*, 501 U.S. at 802-05.  Thus, a state prisoner may be barred from raising federal claims that he did not preserve in state court by making a contemporaneous objection at trial, on direct appeal, or when seeking post-conviction relief.  *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (stating that failure to raise contemporaneous objection to alleged violation of federal rights

during state trial constitutes a procedural default of that issue.); *Thomas v. Lewis*, 945 F.2d 1119, 1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of Appeals held that habeas petitioner had waived claims by failing to raise them on direct appeal or in first petition for post-conviction relief.)  If the state court also addressed the merits of the underlying federal claim, the "alternative" ruling does not vitiate the independent state procedural bar.  *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance of counsel claims "barred under state law," but also discussed and rejected the claims on the merits, en banc court held that the "on-the-merits" discussion was an "alternative ruling" and the claims were procedurally defaulted and barred from federal review).  A higher court's subsequent summary denial of review affirms the lower court's application of a procedural bar.  *Nunnemaker*, 501 U.S. at 803.

In the second procedural default scenario, where a state prisoner failed to present his federal claims in state court returning to state court would be "futile" because the state courts' procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims.  *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.2(a) & (b); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision).  A state post-conviction action is futile where it is time-barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).  Arizona courts have consistently applied their procedural default rules.  *Stewart v. Smith*, 536 U.S. 856, 860 (2002)(holding that Arizona Rule of Criminal Procedure 32.2(a) is an adequate and independent procedural bar); *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting the argument that Arizona courts have not "strictly or regularly followed" Rule 32); *Carriger*

1    *v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992)(rejecting the assertion that Arizona courts'

2    application of procedural default rules had been "unpredictable and irregular.").

3            In either case of procedural default, federal review of the claim is barred absent a

4    showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v.*

5    *Haley*, 541 U.S. 386, 393-94, (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To

6    establish "cause," a petitioner must establish that some objective factor external to the

7    defense impeded his efforts to comply with the state's procedural rules.  *Id.*  The following

8    objective factors may constitute cause: (1) interference by state officials, (2) a showing that

9    the factual or legal basis for a claim was not reasonably available, or (3) constitutionally

10   ineffective assistance of counsel.  *Id.*  Ordinarily, the ineffective assistance of counsel in

11   collateral proceedings does not constitute cause because "the right to counsel does not extend

12   to state collateral proceedings or federal habeas proceedings." *Martinez-Villareal v. Lewis*,

13   80 F.3d 1301, 1306 (9th Cir. 1996).  To establish prejudice, a prisoner must demonstrate that

14   the alleged constitutional violation "worked to his actual and substantial disadvantage,

15   infecting his entire trial with error of constitutional dimension."  *United States v. Frady*, 456

16   U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996).  Where

17   petitioner fails to establish cause, the court need not reach the prejudice prong.

18           A federal court may also review the merits of a procedurally defaulted habeas

19   claim if the petitioner demonstrates that failure to consider the merits of his claim will result

20   in a "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A

21   "fundamental miscarriage of justice" occurs when a constitutional violation has probably

22   resulted in the conviction of one who is actually innocent.  *Id.*  To satisfy the "fundamental

23   miscarriage of justice" standard, petitioner must establish that it is more likely than not that

24   no reasonable juror would have found him guilty beyond a reasonable doubt in light of new

25   evidence.  *Schlup*, 513 U.S. at 327; 28 U.S.C. § 2254(c)(2)(B).  Even if petitioner asserts a

26   claim of actual innocence to excuse his procedural default of a federal claim, federal habeas

27   relief may not be granted absent a finding of an independent constitutional violation

28   occurring in the state criminal proceedings.  *Dretke*, 541 U.S. at 393-94.

1

**B. Application of Law to Petitioner's Claims**

2         Respondents assert that Petitioner's fourth and seventh grounds for relief are

3   procedurally barred.  Petitioner opposes this argument.

4         **1.  Grounds IV and VII**

5         In his fourth ground for relief, Petitioner argues that the charge of delayed

6   medical attention was not based on sufficient evidence. (docket # 1 at 8)   In his seventh

7   ground for relief Petitioner argues that his consecutive sentences violate the Double Jeopardy

8   Clause.  (docket # 1 at 12)

9         Petitioner never presented these federal claims to the state courts.  With respect to

10  Petitioner's fourth ground for relief, although Petitioner raised a claim of insufficient

11  evidence in his petition for review to the Arizona Supreme Court on direct review

12  (Respondents' Exh. QQ at 9-11), in his motion for a new trial (Respondents' Exh. AAA at 7-

13  8), and in his supplemental brief on direct review (Respondents' Exh. LLL at 17-21), he

14  never informed the state courts that he raised this claim on the basis of federal law.

15  Petitioner claims that in his petition for review to the Arizona Supreme Court following

16  remand he asserted a "violation of his fifth amendment due process right" with regard to his

17  claim of insufficient evidence.  (docket # 21 at 5-6, Respondents' Exh. SSS at 9) Petitioner's

18  broad appeal to his right to due process is not sufficient to fairly present a federal claim.

19  *Lyons*, 232 F.3d at 666; *Shumway*, 223 F.3d at 987.  Moreover, Petitioner's presentation of a

20  federal claim for the first time on review to the Arizona Supreme Court does not constitute

21  fair presentation of that claim because it was not raised in a procedurally proper manner.

22  *Castille v. Peoples*, 489 U.S. 346, 351-52 (1989)(stating that submission of a claim for the

23  first time to an appellate court on discretionary review does not constitute fair presentation

24  for purposes of the exhaustion requirement.)  "[S]ubmitting a new claim . . . in a procedural

25  context in which its merits will not be considered absent special circumstances does not

26  constitute fair presentation."  *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994)(citing

27  *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

28

1          Similarly, in his seventh ground, Petitioner claims that his consecutive sentences

2   violate the Double Jeopardy clause.  Although Petitioner raised a similar claim in his opening

3   brief on direct appeal (Respondents' Exh. GG at 7), in his petition for review to the Arizona

4   Supreme Court on direct review (Respondents' Exh. QQ at 7-9), in his supplemental brief on

5   direct review (Respondents' Exh. LLL at 8-10), and in his petition for review before the

6   Arizona Supreme Court after remand (Respondents' Exh. SSS at 8-9), he did not present the

7   claim as a federal issue.  Rather, he relied solely on Arizona law and specifically cited A.R.S.

8   § 13-116 which prohibits double punishment.  (Respondents' Exh. GG at 7, QQ at 7-9, LL at

9   8-10)

10          The presentation of a state law claim is not sufficient to fairly present a federal

11   claim.  Rather, the "fair presentation" component of the exhaustion doctrine requires a state

12   prisoner to present a claim to the state courts based on the same legal theory upon which he

13   relies in federal court.  *Hiivala*, 195 F.3d at 1106 ("The mere similarity between a claim of

14   state and federal error is insufficient to establish exhaustion.");  *Reese*, 541 U.S. at 28 (stating

15   that a reference to ineffective assistance does not alert the state court to the federal nature of

16   the claim); *Castillo v. McFadden*, 399 F.3d 993, 1002 (9th Cir. 2005)(holding that claim and

17   argument relating only to Arizona rules followed by a conclusory citation of a federal

18   constitutional provision, "divorced from any articulated federal legal theory," does not fairly

19   present a federal claim.).  The state courts should be afforded the first opportunity to consider

20   a state prisoner's claim that his conviction and/or sentence violates his federal rights.

21   *Williams*, 529 U.S. at 436-37.  Thus, a federal court cannot grant habeas relief based on

22   federal claims that were never presented to the state courts.  *Noltie v. Peterson*, 9 F.3d 802,

23   804 (9th Cir. 1993).

24          Petitioner's failure to fairly present the federal claims raised in grounds four and

25   seven to the Arizona courts renders those claims technically exhausted, but procedurally

26   defaulted because Arizona's procedural rules prohibit Petitioner from returning to state court

27   to raise those claims.  Generally, any claim not previously presented to the Arizona courts is

28   procedurally barred from federal review because any attempt to return to state court to

properly exhaust a current habeas claim would be "futile."  Ariz. R. Crim. P. 32.1, 32.2(a) &
(b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-
27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for
claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R.
Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's
decision).  A state post-conviction action is futile where it is time-barred.  *Beaty*, 303 F.3d at
987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under
Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction
relief, distinct from preclusion under Rule 32.2(a)).  Here, the deadline for Petitioner to seek
state post-conviction review has long expired.  Specifically, Rule 32.4 of the Arizona Rules
of Criminal Procedure provides that in non-capital cases, "the notice [of post-conviction
relief] must be filed within ninety days after entry of judgment and sentence or within thirty
days after the issuance of the order and mandate in the direct appeal, whichever is later. . . ."
Ariz.R.Crim.P. 32.4; *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989)(affirming the district
court's dismissal of a petition for writ of habeas corpus because state prisoner lacked a
"currently available state remedy at the time of the federal petition.")  Additionally, Arizona
law precludes Petitioner's claims in a subsequent petition for post-conviction relief.  Ariz. R.
Crim.P. 32.2(a)(1)(providing that a claim that could have been raised on direct appeal is
precluded from post-conviction review; Ariz.R.Crim.P. 32.2(a)(2)(providing that a claim that
has "been finally adjudicated on the merits on appeal or in any previous collateral
proceeding" is precluded from review; and Ariz.R.Crim.P. 32.2(a)(3)(precluding post-
conviction relief upon any ground "that has been waived at trial on appeal, or in any previous
collateral proceeding."); *Mata*, 185 Ariz. at 332, 916 P.2d at 1048 (defendant waived his
claim that defendant's counsel was ineffective where defendant did not raise that claim in
first or second petition for post-conviction relief.)

Because Petitioner did not properly present grounds four and seven to the Arizona
state courts, these claims are procedurally barred.  Accordingly, the Court need not reach the
merits of these claims unless Petitioner either establishes "cause and prejudice" or a

1   "fundamental miscarriage of justice." *Bradshaw v. Richey*, ___ U.S.___, 126 S.Ct. 602, 605

2   (2005); *Moorman v. Schriro*, 426 F.3d 1044, 1058 (9th Cir. 2005)(stating that "[a] prisoner

3   who fails to comply with state procedures cannot receive federal habeas corpus review of a

4   defaulted claim unless the petitioner can demonstrate either cause for the default and

5   resulting prejudice, or that failure to review the claims would result in a fundamental

6   miscarriage of justice.")(citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

7            **2.  "Cause and Prejudice" or "Fundamental Miscarriage of Justice"**

8            As discussed below, Petitioner does not establish a basis to overcome the

9   procedural default on grounds four and seven.  Proof of cause "must ordinarily turn on

10  whether the prisoner can show that some objective factor external to the defense impeded

11  [the prisoner's] efforts to comply with the State's procedural rule.  Thus, cause is an external

12  impediment such as government interference or reasonable unavailability of a claim's factual

13  basis." *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004)(citations and internal

14  quotations marks omitted).

15           Liberally construing his Reply, Petitioner argues that his lack of legal knowledge

16  excuses the procedural bar.  Petitioner's *pro se* status and ignorance of the law do not satisfy

17  the cause standard. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir.

18  1986).  Therefore, Petitioner has failed to carry his burden of proof regarding cause and

19  prejudice.

20           Petitioner also fails to establish that failure to consider his claims would result in

21  a fundamental miscarriage of justice. *Schlup*, 513 U.S. at 327.  To satisfy the "fundamental

22  miscarriage of justice" test, Petitioner must show that his trial "resulted in the conviction of

23  one who is actually innocent of the underlying offense." *Dretke v. Haley*, 541 U.S. 368, 393

24  (2004)(reaffirming the "narrow exception" to the requirement that a habeas petitioner

25  demonstrate "cause" for his procedural default in state court for situations concerning a

26  "fundamental miscarriage of justice" where "a constitutional violation has 'probably

27  resulted' in the conviction of one who is 'actually innocent' of the substantive

28  offense.")(quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

1    Petitioner has not asserted a claim of actual innocence.  In view of Plaintiff's

2    failure to overcome the procedural bar, his fourth and seventh claims are barred from federal

3    habeas corpus review.

4    **III.  Analysis of Claims**

5    After discussing the standard of review, the Court will consider the merits of

6    Petitioner's remaining claims which are properly before the Court.

7    **A. Standard of Review**

8    In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

9    ("AEDPA") which "modified a federal habeas court's role in reviewing state prisoner

10   applications in order to prevent federal habeas 'retrials' and to ensure that state-court

11   convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685,

12   693 (2002).

13   Under the AEDPA, a state prisoner "whose claim was adjudicated on the merits

14   in state court is not entitled to relief in federal court unless he meets the requirements of 28

15   U.S.C. § 2254(d)."  *Price v. Vincent*, 538 U.S. 634, 638 (2003).  Thus, a state prisoner is not

16   entitled to relief unless he demonstrates that the state court's adjudication of his claims

17   "resulted in a decision that was contrary to, or involved an unreasonable application of,

18   clearly established Federal law, as determined by the Supreme Court of the United States" or

19   "resulted in a decision that was based on an unreasonable determination of the facts in light

20   of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1),(2); *Carey*

21   *v. Musladin*, ___ U.S. ___, 127 S.Ct. 649, 653 (2006); *Lockyer v. Andrade*, 538 U.S. 63, 75-

22   76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006).  To determine whether a

23   state court ruling was "contrary to" or involved an "unreasonable application" of federal law,

24   courts must look exclusively to the holdings of the Supreme Court which existed at the time

25   of the state court's decision. *Mitchell v. Esparza*, 540 U.S. 12, 15-15 (2003); *Yarborough v.*

26   *Gentry*, 540 U.S. 1, 5 (2003).  Accordingly, the Ninth Circuit has acknowledged that it

27   cannot reverse a state court decision merely because that decision conflicts with Ninth

28

1   Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th

2   Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

3   　　　　Even if the state court neither explained its ruling nor cites United States Supreme

4   Court authority, the reviewing federal court must nevertheless examine Supreme Court

5   precedent to determine whether the state court reasonably applied federal law. *Early v.*

6   *Packer*, 537 U.S. 3, 8 (2003).  The United States Supreme Court has expressly held that

7   citation to federal law is not required and that compliance with the habeas statute "does not

8   even require awareness of our cases, so long as neither the reasoning nor the result of the

9   state-court decision contradicts them." *Id.*

10   　　　　A state court's decision is "contrary to" federal law if it applies a rule of law "that

11   contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of

12   facts that are materially indistinguishable from a decision of [the Supreme Court] and

13   nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v.*

14   *Esparza*, 540 U.S 12, 14 (2003)(citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411

15   (2000).

16   　　　　A state court decision involves an "unreasonable application of" federal law if the

17   court identifies the correct legal rule, but unreasonably applies the rule to the facts of a

18   particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005).   An

19   incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*,

20   541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the

21   state's court decision is objectively unreasonable.")  "It is not enough that a federal habeas

22   court, in its independent review of the legal question," is left with the "firm conviction" that

23   the state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75.  Rather, the petitioner

24   must establish that the state court decision is "objectively unreasonable." *Middleton v.*

25   *McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

26   　　　　Where a state court decision is deemed to be "contrary to" or an "unreasonable

27   application of" clearly established federal law, the reviewing court must next determine

28   whether it resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th

- 15 -

1   Cir. 2002).  Habeas relief is warranted only if the constitutional error at issue had a

2   "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

3   *Abrahamson*, 507 U.S. 619, 631 (1993).  In § 2254 proceedings, the federal court must assess

4   the prejudicial impact of a constitutional error in a state-court criminal proceeding under

5   *Brecht's* more forgiving "substantial and injurious effect" standard, whether or not the state

6   appellate court recognized the error and reviewed it for harmlessness under the "harmless

7   beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18, 24

8   (1967).  *Fry v. Pliler*, ___ U.S.___, 127 S.Ct. 2321, 2328 (2007).  The *Brecht* harmless error

9   analysis also applies to habeas review of a sentencing error.  The test is whether such error

10  had a "substantial and injurious effect" on the sentence.  *Calderon v. Coleman*, 525 U.S. 141,

11  145-57 (1998) (holding that for habeas relief to be granted based on constitutional error in

12  capital penalty phase, error must have had substantial and injurious effect on the jury's

13  verdict in the penalty phase.); *Hernandez v. LaMarque*, 2006 WL 2411441 (N.D.Cal., Aug.

14  18, 2006) (finding that even if the evidence of three of petitioner's prior convictions was

15  insufficient, petitioner was not prejudiced by the court's consideration of those convictions

16  because the trial court found four other prior convictions which would have supported

17  petitioner's sentence.)  The Court will review Petitioner's claims under the applicable

18  standard of review.

19          **B.  Ground One - Due Process and Jury Instructions**

20          In his first ground for relief, Petitioner argues that the trial court violated his right

21  to due process by giving a jury instruction that did not require a specific-intent finding to

22  support the predicate felony - child-abuse - of the felony-murder charge.  (docket # 1)

23          Specifically, Petitioner argues that the State of Arizona's statutes governing child

24  abuse require a finding of specific intent that the defendant committed the offense with the

25  mental states of "intentionally" or "knowingly."  (docket # 1 at 5)  Petitioner claims that the

26  jury instructions, however, did not require a finding of specific intent to support the felony of

27  child abuse which provided the basis for the felony-murder charge. (*Id.*)

28

1    Petitioner presented this claim to the state court on direct review.  (Respondents'

2   Exh. GG, LLL)  The state court determined that the trial court properly instructed the jury on

3   the *mens rea* element of class 2 felony child abuse.  (Respondents' Exh. LL)  Petitioner has

4   not shown that the State court's resolution of this issue is contrary to or involves an

5   unreasonable application of federal law.  Moreover, ground one presents a state law issue

6   which is not properly before the Court on federal habeas corpus review.

7    Title 28 U.S.C. § 2254(a) defines the scope of federal habeas corpus review:

8    The Supreme Court, a Justice thereof, a circuit judge, or a district
     court shall entertain an application for a writ of habeas corpus in
9    behalf of a person in custody pursuant to the judgment of a State court
     *only* on the ground that he is in custody in *violation of the Constitution*
10   *or law or treaties of the United States*.

11  28 U.S.C. § 2254(a)(emphasis added).  Habeas corpus relief is not available for errors of

12  state law, thus, a "habeas petition must allege the petitioner's detention violates the

13  constitution, a federal statute or a treaty."  *Franzen v. Brinkman*, 877 F.2d 26 (9th

14  Cir.1989)(citing 28 U.S.C. § 2254(c)(3)).  "[F]ederal habeas corpus does not lie for errors of

15  state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S.

16  764, 780 (1990)); see also *Little v. Crawford*, 449 F.3d 1075, 1083 (9th Cir. 2006)(stating that

17  "a violation of state law standing alone is not cognizable in federal court on habeas.")

18  (internal quotations omitted.)  The purpose of habeas proceedings under § 2254 is to ensure

19  that state convictions satisfy federal constitutional requirements applicable to states.  *Burkey*

20  *v. Deeds*, 824 F.Supp. 190, 192 (D.Nev. 1993).  The federal district court does "not sit as a

21  super state supreme court."  *Id.*  Rather, federal courts may only intervene in state

22  proceedings to correct errors of constitutional magnitude *Id.*  (citing *Oxborrow v. Eikenberry*,

23  877 F.2d 1395, 1400 (9th Cir. 1989)).

24    Accordingly, a federal court on habeas review must defer to a state court's

25  construction of state law questions such as whether a jury instruction accurately stated state

26  law.  *Engle v. Isaac*, 456 U.S. 107, 119-21, n. 21 (1982)(stating that a challenge to the

27  correctness of self-defense instruction under state law provides no basis for federal habeas

28  relief).  This Court lacks the authority to grant habeas relief on Petitioner's challenge to the

- 17 -

1  child-abuse jury instructions because the manner in which the state court interprets its own

2  law is an issue of state law.  28 U.S.C. § 2254; *Hendricks v. Vasquez*, 974 F.2d 1099, 1107

3  (9th Cir. 1992)("The trial judge . . . rejected the proposed instruction on the state law ground

4  that the claim of right defense is inapplicable to claims based on prostitution.  Because this is

5  purely an issue of state law. . . the issue is not cognizable on federal habeas."); *Mitchell v.*

6  *Goldsmith*, 878 F.2d 319, 324 (9th Cir. 1989)(finding that habeas corpus relief was

7  unavailable for petitioner's claim that jury instructions did not comply with state law.)

8          Similarly, Petitioner's claim that the jury instructions regarding child abuse

9  violated his due process rights presents a state law issue which Petitioner cannot transform

10  into a federal one by merely citing the due process clause.  *Poland*, 169 F.3d at 584.

11  Moreover, improper jury instructions constitute a ground for habeas relief only if the

12  instructions "so infected the entire trial that the resulting conviction violates due process."

13  *Prantil v. State of California*, 843 F.2d 314, 317 (9th Cir. 1988) "To warrant habeas relief, the

14  instructions cannot be merely 'undesirable, erroneous, or even universally condemned,'but

15  must violate [due process.]" *Id.*  As previously stated, this Court must defer to the state

16  court's finding that the jury instruction regarding child abuse complied with state law.

17  Accordingly, Petitioner has not shown that the challenged instruction was improper or that

18  the instruction "so infected the entire trial" that his conviction violates due process.  *Id.*

19          Because Petitioner's state-law challenge to the jury instructions on child abuse is

20  a state law claim not cognizable on federal habeas review, this Court is precluded from

21  reviewing ground one.  Moreover, Petitioner's due process challenge to the child abuse jury

22  instruction lacks merit.

23      **C.  Ground Two**

24          In his second ground for relief, Petitioner argues that the trial court violated his

25  right to due process by instructing the jury that it could infer his intent from a voluntary act.

26  (docket # 1 at 6) Petitioner claims that Revised Arizona Jury Instruction ("RAJI") Criminal

27  Standard 17 (1989) has the potential to confuse the jury and "should not be given in cases

28

1  where there is no evidence to support a finding that a defendant has acted unconsciously or

2  without effort and determination."  (*Id.*)

3       Petitioner raised this claim in his Supplemental Brief on direct review.  He argued

4  that RAJI Criminal Standard 17 improperly shifted the burden of proof to him.

5  (Respondents' Exh. MMM at 3, Exh. LLL at 11)  The appellate court found that the jury

6  instruction did not impermissibly shift the burden of proof, but rather allowed the jury to

7  infer intent from a voluntary act.  (Respondents' Exh. MMM at 3-4)

8       Petitioner's claim fails because he has not established that the state court's

9  adjudication of his claims "resulted in a decision that was contrary to, or involved an

10  unreasonable application of, clearly established Federal law, as determined by the Supreme

11  Court of the United States" or "resulted in a decision that was based on an unreasonable

12  determination of the facts in light of the evidence presented in the State court proceeding."

13  28 U.S.C. § 2254(d)(1),(2); *Carey v. Musladin*, ___ U.S. ___, 127 S.Ct. 649, 653 (2006).

14       Although Petitioner did not cite the text of the challenged instruction in his

15  Petition, he did refer to Revised Arizona Jury Instruction Criminal Standard 17 (1989) which

16  provides that "the State must prove that the defendant did a voluntary act forbidden by law.

17  You  may determine that Defendant intended to do the act if it was done voluntarily."  The

18  court gave this instruction at trial.  (Respondents' Exh. Y at 85)  Despite this reference to

19  RAJI Criminal Standard 17, Respondents analyzed the following jury instruction "Intent *may*

20  *be inferred* from all the facts and circumstances disclosed by the evidence.  It need not be

21  established exclusively by direct sensory proof.  The existence of intent if one of the

22  questions of fact for your determination." (Respondents' Exh. Y at 85)(emphasis added)

23  Although Respondents' cited the wrong jury instruction, their legal analysis is applicable to

24  the challenged instruction.

25       Improper jury instructions constitute a ground for habeas relief only if the

26  instructions "so infected the entire trial that the resulting conviction violates due process."

27  *Prantil v. State of California*, 843 F.2d 314, 317 (9th Cir. 1988) "To warrant habeas relief, the

28  instructions cannot be merely 'undesirable, erroneous, or even universally condemned,'but

1    must violate [due process.]" *Id.*  A jury instruction violates due process if it "creates a

2    mandatory presumption."  *Francis v. Franklin*, 471 U.S. 307, 314-15 (1985).  However, no

3    violation occurs when a jury instruction merely creates a "permissible inference . . .

4    suggest[ing] to the jury a possible conclusion to be drawn if the State proves predicate facts,

5    but does not require the jury to draw that conclusion."  *Id.*; see also, *Evans v. Lewis*, 855 F.2d

6    631, 635-36 (9th Cir. 1988)(affirming denial of a federal habeas claim because the

7    challenged jury instruction "states a permissive inference" in that it "informs the jury that it

8    may decide whether the requisite intent exists if it first finds that the defendant's acts were

9    voluntary" and "thus allows the jury to infer intent and does not require a presumption of

10   intent.")(footnote omitted).

11          The challenged jury instruction permits the jury to "infer" intent which complies

12   with clearly established Supreme Court law articulated in *Francis*, 471 U.S. at 314-15; 28

13   U.S.C. § 2254.  Accordingly, Petitioner's second ground for relief fails.

14                      **D.  Ground Three - Grand Jury Instruction**

15          In his third ground for relief, Petitioner argues that the State failed to notify him

16   of true nature of the charge against him because the grand jury and the trial jury were

17   instructed as to different theories of the offense.  (docket # 1 at 7)  Petitioner states that a

18   "Grand Jury charged Petitioner with causing the victim to be placed in a situation where his

19   person or health was *endangered*.  Grand Jurors had the option of choosing the *actus reus*

20   element of the crime and did not choose to charge Petitioner 'causing physical injury.'

21   However, the jury instructions changed the *actus reus* from causing the victim to be placed in

22   a situation where his person or health was *endangered* to *causing physical injury*."

23   (*Id.*)(emphasis added)

24          Petitioner raised this claim to the state courts on direct review after remand.

25   (Respondents' Exh. LLL)  The Arizona Court of Appeals explained that Petitioner's claim

26   was based on the variation between the language of the indictment and the language of the

27   jury instructions.  Specifically, Count 3 of the indictment reads that defendant "under

28   circumstances likely to produce death or cause physical injury, and while having the care and

                                                    - 20 -

1  custody of [the victim], a child under 15 years of age, intentionally, or knowingly caused [the

2  victim] to be placed in a situation where his person or health was *endangered*, in violation of

3  A.R.S. §§ 13-3623(A), (B), 13-604.01, 13-702, 13-801."  (Respondents' Exh. I)(emphasis

4  added)  The trial court instructed the jury as to "the crime of child abuse under circumstances

5  *likely to produce death or serious physical injury*."  (Respondents' Exh. Y at 89)(emphasis

6  added)  Plaintiff claimed that causing physical injury is different from endangering.  The

7  appellate court rejected Petitioner's claim.  (Respondents' Exh. MMM)  The Court of

8  Appeals explained that both phrases "likely to produce death or serious physical injury" and

9  "endanger" are part of A.R.S. § 13-3623(B).  The Court of Appeals further found that

10 because the victim was actually harmed, the jury instruction and the indictment were

11 consistent and accurately reflected the relevant statute.  (Respondents' Exh. MMM at 4)

12 Petitioner has not established that the State court's decision is contrary to, or involves an

13 unreasonable application of, clearly established Supreme Court law.  28 U.S.C. § 2254.

14         To the extent that Petitioner challenges the grand jury proceedings, his claim fails

15 because the Fifth Amendment's grand jury clause has not been incorporated by the

16 Fourteenth Amendment's Due Process clause and, therefore, does not apply to the states.

17 *Hurtado v. People of California*, 110 U.S. 516, 534-35 (1884)("Indictment by grand jury is

18 not part of the due process guarantees of the Fourteenth Amendment that apply to state

19 criminal defendants."); *Jeffries v. Blodgett*, 5 F.3d 1180, 1188 (9th Cir. 1993).  As a defendant

20 in state court, therefore, Petitioner's only federal constitutional right to a Grand Jury stems

21 from the Fourteenth Amendment's Due Process Clause.  *Rose v. Mitchell*, 443 U.S. 545, 557

22 n. 7 (1979)(stating that "[t]he fact that there is no constitutional requirement that States

23 institute prosecutions by means of an indictment returned by a grand jury does not relieve

24 those States that do employ grand juries from complying with the commands of the

25 Fourteenth Amendment in operation of those juries.")(citations omitted).

26         Here, the record reflects that Petitioner received notice of the substance of the

27 charges in compliance with the Due Process Clause.  The indictment satisfied the Sixth

28 Amendment's notice requirement because the text of the indictment tracked the language of

1   Arizona's child-abuse statute, A.R.S. § 13-3623(A), (B).  *United States v. Bailey*, 444 U.S.

2   394, 414 (1980) ("We have held on several occasions that 'an indictment is sufficient it if,

3   first, contains the elements of the offense charged and fairly informs the defendant of the

4   charges against which he must defend, and, second, enables him to plead an acquittal or

5   conviction in bar of future prosecutions for the same offense.' . . .  These indictments, which

6   track closely the language of § 751(a), were undoubtedly sufficient under this standard.")

7   (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974).

8         The Sixth Amendment did not require that the indictment specify which precise

9   act of child abuse Petitioner committed.  *United States v. Musacchio*, 968 F.2d 782, 787 (9th

10  Cir. 1991)("[T]he government was not required to allege its theory of the case or list

11  supporting evidence to prove the crime alleged . . .In fact, an indictment that sets forth the

12  charged offense in the words of the statute itself is generally sufficient."); *United States v.*

13  *Sterling*, 742 F.2d 521, 526 (9th Cir. 1984) (holding that "there is no legal requirement that

14  the violations which make up the continuing series be specifically listed in the indictment.");

15  *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982)("The Government need not allege

16  its theory of the case or supporting evidence, but only the essential facts necessary to apprise

17  a defendant of the crime charged.").

18        Moreover, even if the indictment were facially defective, Petitioner is not entitled

19  to relief because he had actual notice that the charges were based on physical injury caused to

20  the victim because the State discussed the victim's injuries during opening statement and

21  presented extensive evidence of those physical injuries during trial.  (Respondents' Exh. P at

22  33-36, 39-40, 57-59, 68, 78-80, 106-108, Respondents' Exh. Q at 10-11, 78, 140-41, 150,

23  Respondents' Exh. T at 11-27; U at 52-53)  "[I]f a defendant has actual notice of the charges,

24  due process may be satisfied despite an inadequate indictment."  *United States* v. *Alvarez-*

25  *Moreno*, 874 F.2d 1402, 1411(11th Cir. 1989) (quoting United *States v. Becton*, 751 F.2d

26  250, 256 (8th Cir. 1984); see also *Murtishaw v. Woodford*, 255 F.3d 926, 953-54 (9th Cir.

27  2002)(holding that defendant received adequate notice during trial because prosecution

28  advanced new theory of guilt during its opening statement, presentation of evidence, and jury

1  instruction conference, all of which occurred before closing arguments); *Stephens v. Borg*, 59

2  F.3d 932, 934-36 (9th Cir. 1995) (holding that failure of the indictment to charge felony

3  murder did not violate Constitution when defendant "had five days of actual notice of the

4  prosecution's intent to rely on a felony-murder theory" prior to closing argument); *Morrison*

5  *v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992) ("Constitutionally adequate notice of a felony-

6  murder charge could be provided to a defendant by means other than the charging

7  document.").

8           Based on the foregoing, Petitioner has not established that he is entitled to habeas

9  corpus relief based on his allegations in Ground Three.

10                    **E.  Grounds Five and Six - Ineffective Assistance of Counsel**

11          In ground five, Petitioner argues that he received ineffective assistance of counsel

12 because trial counsel failed to object to allegedly erroneous jury instructions regarding the

13 "lesser-included" offenses of child abuse.  (docket # 1 at 10)  In ground six, Petitioner alleges

14 that trial counsel lacked knowledge of the *mens rea* element required by Arizona's child

15 abuse statutes and believed that Arizona law "required a finding that a defendant be aware of

16 the enumerated circumstances."  (*Id.*)  Petitioner claims that counsel's misunderstanding of

17 the law led to Petitioner's rejection of an advantageous plea offer.  (*Id.* at 11)

18                    **1.  Legal Standard**

19          The clearly established federal law governing claims of ineffective assistance of

20 counsel is the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).

21 Under *Strickland*, to demonstrate ineffective assistance of counsel, a petitioner must establish

22 that counsel's performance was objectively deficient and that counsel's deficient

23 performance prejudiced the petitioner.  *Strickland*, 466 U.S. 668.  To be deficient, counsel's

24 performance must be "outside the wide range of professionally competent assistance."

25 *Strickland*, 466 U.S. at 690.  Counsel has no duty to raise legally frivolous claims.  *Jones v.*

26 *Barnes*, 463 U.S. 745, 751 (1983).  In assessing performance, courts afford a strong

27 presumption that counsel rendered adequate assistance and exercised reasonable professional

28 judgment in making decisions.  *Strickland*, 406 U.S. at 690.  "A fair assessment of attorney

1  performance requires that every effort be made to eliminate the distorting effects of

2  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate

3  the conduct from counsel's perspective at the time." *Bonin v. Calderon*, 59 F.3d 815, 833 (9th

4  Cir. 1995).  The test has nothing to do with what the best lawyers would have done.  Nor is

5  the test even what most good lawyers would have done.  We ask only whether some

6  reasonable lawyer at trial could have acted, in the circumstances, as defense counsel acted at

7  trial.  *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998 ), *rev'd on other grounds,*

8  525 U.S. 141 (1998).

9          To show prejudice, petitioner must demonstrate a "reasonable probability that, but

10 for counsel's unprofessional errors, the result of the proceeding would have been different.

11 A reasonable probability is a probability sufficient to undermine confidence in the outcome."

12 *Id.* at 694; *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).  The court may proceed

13 directly to the prejudice prong.  *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir.

14 2000)(citing *Strickland*, 466 U.S. at 697).  The court, however, may not assume prejudice

15 solely from counsel's allegedly deficient performance.  *Jackson*, 211 F.3d at 1155; *United*

16 *States v. Gonzalez-Lopez*, ___U.S.___, 126 S.Ct. 2557, 2563 (2006)(stating that "a violation

17 of the Sixth Amendment right to effective representation is not 'complete' until the defendant

18 is prejudiced.")

19         The *Strickland* test also applies to the a defendant who has been "represented by

20 counsel during the plea process and enters his plea upon the advice of counsel . . . ."  *Hill v.*

21 *Lockhart*, 474 U.S. 52, 56-58 ( 1985).  In the plea context, the prejudice prong hinges on

22 "whether counsel's constitutionally ineffective performance affected the outcome of the plea

23 process."  *Hill*, 474 U.S. at 58-59.   In other words, petitioner must show that "there is a

24 reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

25 would have insisted on going to trial."  *Id.* at 59 (footnote omitted).

26         **2.  Ground Five**

27         In ground five, Petitioner claims that trial counsel was ineffective for failing to

28 object to the jury instructions regarding the "lesser-included child abuse offenses."  In his

1  Reply, Petitioner clarifies that he objects to the instructions regarding "recklessness" and

2  "criminal negligence."  (docket # 21)

3         Petitioner raised this claim on post-conviction proceedings.  The court rejected

4  Petitioner's claim finding that Petitioner failed to establish that counsel's performance fell

5  below an objective standard of reasonableness.  (Respondents' Exh. HHHH) The court

6  further found that even assuming that counsel's performance was deficient, "there is

7  absolutely no evidence that such claimed deficiency would have changed the verdict or

8  sentence."  (Respondents' Exh. HHHH) As discussed below, Petitioner fails to establish that

9  the state court's decision is contrary to or rests on an unreasonable application of *Strickland*.

10        During the conference with counsel regarding jury instructions, the court stated

11  that "I've combined the child abuse definitions [related to Counts III and IV] into one

12  definition, and the lesser includeds as well."  (Respondents' Exh. Y at 4-5) Petitioner's

13  defense counsel advised the court that he had no objections to the instructions. (Respondents'

14  Exh. Y at 9)

15        Accordingly, the court gave the following instructions:

16        The crime of child abuse may be committed in several different fashions.
          The offense may be committed under circumstances likely to produce death
17        or serious physical injury or under circumstances other than those likely to
          produce death or serious physical injury.  (Respondents' Exh. Y at 89)
18
          * * *
19        This crime includes the less serious offense of child abuse under circumstances
          other than those likely to produce death or serious physical injury.  You may
20        consider the less serious crime if, after reasonable efforts, one or more of you
          cannot agree on the greater charge.
21
22        As to the crime of child abuse under circumstances not likely to produce death or
          serious physical injury, the State must prove:
23
              1.  The defendant caused the child to suffer a *physical injury*; and
24
              2.  The defendant acted either intentionally or knowingly or *recklessly*
25            or with *criminal negligence*.

26  (Respondents' Exh. Y at 90)

27        The court also instructed the jury that:

28        The words 'recklessly' or 'with reckless disregard' mean that a defendant
          is aware of and consciously disregards a substantial and unjustifiable risk

- 25 -

1
2

that conduct will result in *death or serious physical injury*.  The risk must be such that disregarding it is a gross deviation from what a reasonable person would do in the situation.  (Respondents' Exh. Y at 86)

3
4

* * *
The trial court instructed the jury that:

5
6

the words 'criminal negligence' mean that a defendant failed to recognize a substantial risk of causing the death of another person.  The risk must [be] such that the failure to recognize it is a gross deviation from what a reasonable person would do in the situation.

7

(Respondents' Exh. Y at 88)

8       Petitioner claims that the jury instruction on recklessness confused the jury

9   because it included the terms "*death or serious physical injury*" although the "less serious

10  offense of child abuse under circumstances *other than those* likely to produce death or

11  serious physical injury, requires that the State prove that: "1.  The defendant caused the child

12  to suffer a *physical injury*; and 2.  The defendant acted either intentionally or knowingly or

13  *recklessly* or with *criminal negligence*."  (Respondents' Exh. Y at 90) Petitioner contends

14  that use of the terms "death or serious physical injury" in the definition of recklessness was

15  inconsistent with the definition of the less serious offense of child abuse.

16      Even assuming that trial counsel's performance was deficient based on his failure

17  to object to the foregoing instructions, Petitioner's claim fails because he has not established

18  that there is a  "reasonable probability that, but for counsel's unprofessional errors, the result

19  of the proceeding would have been different.  A reasonable probability is a probability

20  sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694; *Ortiz v.* 149

21  F.3d at 934.  As an initial matter, the jury was instructed to consider the less serious offense

22  of child abuse under circumstances *not likely* to produce death or serious physical injury,

23  *only* if it could not agree on the greater charge.  The jury convicted Petitioner of Count I, first

24  degree murder; Count III, child abuse under circumstances *likely* to produce death or serious

25  physical injury, committed intentionally or knowingly against children; and Count IV child

26  abuse under circumstances *likely* to produce death or serious physical injury, committed

27  intentionally or knowingly against children (alleged failure to seek medical care.)

28

1   (Respondents' Exh. CC)  There is no evidence that the jury chose the greater charge because
2   of its confusion regarding the definitions of recklessness or criminal negligence.

3        The Court finds that Petitioner has not shown that the state court's resolution of
4   his claim of ineffective assistance of counsel is "contrary to" or based on "an unreasonable
5   application of" federal law. Accordingly, this claim fails.

6        **3. Ground Six**

7        In his sixth ground for relief, Petitioner argues that counsel misunderstood the
8   law regarding the *mens rea* for child abuse.   He further claims that counsel's advice which
9   was based on this lack of understanding, led to Petitioner's rejection of an advantageous plea
10  offer.  Petitioner raised this claim on post-conviction proceedings.  The court rejected this
11  claim finding that Petitioner failed to establish that counsel's performance fell below an
12  objective standard of reasonableness.  (Respondents' Exh. HHHH) The court further found
13  that even assuming that counsel's performance was deficient, "there is absolutely no
14  evidence that such claimed deficiency would have changed the verdict or sentence."
15  (Respondents' Exh. HHHH)

16       Petitioner fails to establish that the state court's decision is contrary to or rests on
17  an unreasonable application of *Strickland*.   Petitioner claims that counsel was ineffective
18  because he led Petitioner to believe that the *mens rea* element of the child abuse statutes
19  required the State to prove that Petitioner either (1) intended to cause the head injury to the
20  victim, or (2) that he did so knowing that the circumstance was one likely to produce death or
21  serious physical injury.  Petitioner claims that contrary to counsel's explanation of the law to
22  Petitioner, the Arizona Court of Appeals has explained that a defendant's "mental state
23  concerning the act he takes in inflicting the injury is critical, but his mental state concerning
24  the likelihood of death or serious injury under the circumstances is inconsequential."
25  (Respondents' Exh. LL at 6)

26       Petitioner does not provide any support for his claim that he rejected a favorable
27  plea offer based on counsel's erroneous advice.  Although Petitioner may have been
28  confused, Petitioner has not established that counsel's performance was deficient.

1    In view of the foregoing, the state courts' rejection of Petitioner's claims of

2  ineffective assistance of counsel did not amount to an unreasonable application of *Strickland*

3  to Petitioner's case.   Petitioner, therefore, is not entitled to habeas corpus relief.

4  **IV.  Conclusion**

5    Based on the foregoing, Petitioner's claims are either procedurally defaulted or

6  fail on the merits.

7    Accordingly,

8    IT IS HEREBY RECOMMENDED that Petitioner's Petition for Writ of Habeas

9  Corpus (docket # 1) be **DENIED**.

10    This recommendation is not an order that is immediately appealable to the Ninth

11  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

12  Appellate Procedure, should not be filed until entry of the District Court's judgment.  The

13  parties shall have ten days from the date of service of a copy of this recommendation within

14  which to file specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules

15  72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within

16  which to file a response to the objections.  Failure to file timely objections to the Magistrate

17  Judge's Report and Recommendation may result in the acceptance of the Report and

18  Recommendation by the District Court without further review.  *See United States v. Reyna-*

19  *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual

20  determinations of the Magistrate Judge will be considered a waiver of a party's right to

21  appellate review of the findings of fact in an order or judgment entered pursuant to the

22  Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

23    DATED this 21st day of September, 2007.

24

25

26

Lawrence O. Anderson
United States Magistrate Judge

27

28

- 28 -